IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHELLY ANNETTE BOLTON                                                    PLAINTIFF


v.                                          CASE NO.        12-2161


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) and supplemental security income

("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial

review, the court must determine whether there is substantial evidence in the administrative

record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g)*.*


## I.  Procedural Background:

The plaintiff filed her applications for SSI on January 19, 2010, alleging an onset date of

September 2008, due to plaintiff's multiple personality, diabetes, osteoporosis, steven johnson

syndrome, scoliosis, blurred vision, high blood pressure, memory problems, and being a slow

learner (T. 154).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff

then requested an administrative hearing, which was held on December 20, 2010.  Plaintiff was

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael
J. Astrue as the defendant in this suit.

present and represented by counsel.

At the time of the administrative hearing, plaintiff was 49 years of age and possessed a high school education.  The Plaintiff  had no past relevant work ("PRW") experience.      On March 4, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's mood disorder, borderline intellectual functioning, and a deformity of the second finger on the left hand did not meet or equal any Appendix 1 listing.  T. 15.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to:

"perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is able to occasionally finger with her left (non-dominant) upper extremity. The claimant can understand, remember, and carry out simple, routine and repetitive tasks wherein the complexity of tasks is learned and performed by rote. The claimant can respond appropriately to supervision that is simple, direct, and concrete, and to co-workers, the general public and usual work situations. She can perform low stress work (defined as occasional decision making and occasional changes in the work place settings).. T. 17.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as  stock clerk, production worker, and laundry worker.  T. 22.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining

the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial

evidence in the record to support the Commissioner's decision, the court may not reverse the

decision simply because substantial evidence exists in the record to support a contrary outcome,

or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v.

Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).

The Act defines "physical or mental impairment" as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff

must show that his disability, not simply his impairment, has lasted for at least twelve

consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation

process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if

the final stage is reached does the fact finder consider the plaintiff's age, education, and work

experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d

1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

**A.  Subjective Complaints of Pain:**

Plaintiff contends that the ALJ did not properly analyze her subjective complaints of back pain in accordance with *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984), and that the ALJ improperly discounted her subjective complaints because she provided only one medical record. See Pl.'s Br. at 13-15.

The Plaintiff completed a Pain Questionnaire at the time she filed for benefits stating that she had pain through her back and legs.  That she had trouble standing up at times (T. 169) and that the only thing that helped was medication. (T. 170).  In her Function Report the Plaintiff stated that the pain "keeps me awake & I walk the floor". (T. 173).  She testified that she had a "lot of pain in her back." (T. 17).  In her work history the Plaintiff stated "I'm not able to work without problems & now its harder for me. I hurt to bad all I can think about is the pain & want to get relief. I'm running out of medicine don't have any insurance or money to get my medicine filled I'm in pain now while filling these forms I have been in lots of tears". (T. 168).

There was nothing in the medical records to document the Plaintiff's disabling pain and the ALJ commented that Plaintiff provided only one medical record, Exhibit 3F, found at Transcript pages 243-246 (Tr. 21). This medical record shows that Plaintiff sought treatment for a rash on April 22, 2009, and also mentions a past medical history of reflux, hypertension, and diabetes mellitus that were unchanged from a prior examination (Tr. 244).

The ALJ acknowledged that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a

consideration of the entire case record." (T. 17)

The ALJ must consider several factors when evaluating a claimant's subjective

complaints of pain, including claimant's prior work record, observations by third parties, and

observations of treating and examining physicians relating to 1) the claimant's daily activities; 2)

the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage,

effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at

695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may

discount subjective complaints when they are inconsistent with the evidence as a whole. Id.

(citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long

as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781,

783 (8th Cir.2004).

1.  Work:

The Plaintiff has no Substantial Gainful Activity except for 1984 when she made

$8765.19.  Since 1987 she has had, in essence, no earning. (T. 127). The ALJ specifically found

that the Plaintiff had no past relevant work. (T. 21).  *See Wildman v. Astrue,* 596 F.3d 959, 968-

69 (8th Cir. 2010) (ALJ may consider a claimant's sporadic work history when determining

credibility).  The ALJ noted that "the claimant also admitted that she did not work, even when

she had access to transportation, and initially stated that she did not work because she and her

husband fought more when she worked. Later, she admitted that she just gave up [on working]."

T. 21.

2.  Daily Activities:

The ALJ noted that the Plaintiff "testified that she cared for her elderly parents both

before and after her mother was placed in the nursing home. She prepared meals, did the laundry

and the housework and ran errands. The claimant acknowledged to Dr. Kralik that if not for

having to care for her mother, there would be no reason she could not do something such as

childcare." T. 21.  On her Function Report the Plaintiff indicated that she had no real problems

with personal care (T. 173), that she prepares meals (T. 174), she could drive a car,  does the

shopping (T. 175), talks on the phone and attends church. (T. 176).

These activities do not support plaintiff's claim of disability.  *See Pena v. Chater*, 76

F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go

to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors,

cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out

garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994)

(claimant's ability to read, watch television, and drive indicated his pain did not interfere with his

ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live

alone, drive, grocery shop, and perform housework with some help from a neighbor).

3.  Precipitating and Aggravating Factors:

In Dr. Kralik's Mental Diagnostic Evaluation on March 9, 2010 she noted that there "was

an associated lack of willingness to acknowledge or a tendency to minimize her responsibility in

at least some of the purported problematic circumstances in which she has found herself over the

years (occupationally, logistically, or otherwise). (The style and level of exaggeration and

inconsistency also calls into question some of what she alleges.)  T. 254.  Dr. Kralik further noted

that the "The ongoing access to and continuation of narcotic pain relievers in light of the past

admissions (back in 2008!) of a history of dependence on these substances is of concern as

well--especially in light of inconsistencies across reports of her history of alcohol use (especially

relative to the evident lack of truthfulness or accuracy in her reporting here). A pain disorder

is not diagnosed here--given the absence of evident pain behaviors and lack of clarity regarding

the extent to which any complaints or manifestations of pain are associated with the narcotic

abuse/dependency issues (e.g. as impacting drug-seeking efforts, causing break through

/'rebound' pain, exacerbating the perception of pain, etc.).  T. 254.  As a result Dr. Kralik

diagnosed the Plaintiff as "malingering/exaggeration of report of symptoms as impacting

occupational functionality." (T. 254).

Assessing and resolving credibility issues is a matter that is properly within the purview

of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its

own credibility opinion for that of the ALJ).  As the Eighth Circuit has observed, "Our

touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards*

*v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  The court should , " defer to the ALJ's

determinations regarding the credibility of testimony, so long as they are supported by good

reasons and substantial evidence." *Perks v. Astrue* 687 F.3d 1086, 1091 (C.A.8 (Ark.),2012).  In

this instance the court finds that the ALJ properly discounted the subjective complaints of pain

made by the Plaintiff.

**B.  Development of the Record:**

The Plaintiff next contends that the ALJ failed to properly develop the record by not

ordering a bone density test. (ECF No. 9, p. 18).

The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d

935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination

of disability may be made). This duty exist "even if ... the claimant is represented by counsel."

*Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428,

431 (8th Cir.1983)).  The ALJ is not required to act as Plaintiff's counsel. *See Clark v.*

*Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute

counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d

484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where

such failure is unfair or prejudicial").

The Plaintiff listed osteoporosis as one of the basis for her disability (T. 154) but

presented no medical evidence that the condition existed. The Plaintiff was seen by Dr. Hoang

for a consultive physical exam on May 14, 2010.  Under Brief History of Limiting Impairments

Dr. Hoang made the following notation: "osteoporosis diagnosed 2 yrs ago (bone density test).

Dr. Hoang did not perform a bone density test, nor did he recommend that one be performed (Tr.

279-283). The record contains no indication that further testing was necessary although Dr.

Hoang did diagnose the Plaintiff with osteoporosis. (T. 283).  Dr. Hoang's report was provided to

Dr. Karmen Hopkins, M.D. (T. 293) who provided a Physical RFC Assessment on May 18,

2010. After a review of the evidence the only physical limitation Dr. Hopkins found to be present

was her limited ability to perform fine manipulations with her fingers. (T. 290).

The probative value of a bone density test is highly dubious in light of the activities of

daily living exhibited by the Plaintiff.  There is nothing in the record to suggest that the

Plaintiff's bones are so brittle that they are subject to break with slight exertion.

There is no bright line rule indicating when the Commissioner has or has not adequately

developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v.*

*Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994).  In this case the court finds that the ALJ

committed no error in failing to obtain a bone density test and that he did, in fact, fully and fairly

develop the record.

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial

evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The

undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.


Dated  this August 22, 2013.



/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE